THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

GREGORY BAGLEY

    Plaintiff,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY, et al.

    Defendants.

Civil Action No. 01CA007271
Calendar #1 - Judge Fisher
Next Event: Trial
April 11, 2005 at 9:30 a.m.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

### I. Plaintiff's Claims

On October 1, 1998, plaintiff was a wheelchair passenger in a Murray's owned "Metro Access" van driven by Murray's employee, William Jenkins. (Pl's Depo. p. 17; Pl. Depo. P. 24). Plaintiff alleges Mr. Jenkins secured his wheelchair, but failed to put on his seat belt. (Pl's Depo. p. 33). He claims that the van made a sudden stop and caused him to fall from his wheelchair onto the floor. Id. Plaintiff alleges neck, shoulder, back, hip, knee and ankle injuries and an aggravation of his multiple sclerosis.

Plaintiff filed suit on September 28, 2001 against numerous defendants. The only remaining defendants are WMATA, Murray's Transportation Services, Inc. and William Jenkins. Plaintiff's complaint alleges negligence based upon a theory of *respondeat superior* and makes the following specific assertion: WMATA is responsible for the actions of defendant van driver William Jenkins, because he failed to properly secure plaintiff by fastening his seat belt and negligently drove the van by failing to keep

EXHIBIT 3

a proper look out and making a sudden stop.

## II. Summary of Argument

No employment relationship existed between William Jenkins and WMATA. WMATA did not own the vehicle Mr. Jenkins drove at the time of the incident. WMATA did not control the manner in which Murray's performed its business, and Murray's relationship to WMATA was that of an independent contractor. No agency relationship existed between WMATA and Mr. Jenkins or WMATA and Murray's, therefore, WMATA is not liable for any acts or omissions alleged against them.

## III. Standard for Granting Summary Judgment

Summary judgment is appropriate whenever the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Sup. Ct. Civ. P. Rule 56. Summary judgment is appropriate if entire record in the case, considered in the light most favorable to the non-moving party fails to raise a material issue of fact for the jury. Osbourne v. Capital City Mortgage Corp., 667 A.2d 1321 (D.C. 1995). Once the moving party has shown the absence of a material fact, the burden shifts to the non-movant to show the existence of a material fact. Ferguson v. District of Columbia, 629 A.2d 15 (D.C. 1993). The non-movant may not rely upon mere allegations to show the existence of material facts, but must produce evidence that, if uncontroverted, would entitle him or her to judgment at trial. Nader v. de Toledano, 408 A.2d 31 (D.C. 1979).

## IV. Argument

## A. No agency relationship existed between WMATA and William Jenkins. Therefore, WMATA is not responsible for Jenkins' acts or omissions.

Nothing in the record establishes an employer-employee relationship between WMATA and William Jenkins. It is well-established that, for an employer-employee relationship to exist, the plaintiff has the burden to prove that the employer directed the employee in "the essential aspects of the job". D.C. Civil Jury Instruction § 6.01 Establishing Employer-Employee Relationship. See also Allison Marie Judah v. Burton Reiner & Morris Mgmt.Inc., 744 A.2d 1037, 1040 (D.C. 2000)(affirming summary judgment because no agency relationship existed). Specifically, D.C. law sets forth several factors to determine whether an employer-employee relationship exists. The factors include: "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, and (5) and whether the work is part of the regular business of the employer." Id., quoting LeGrand v. Insurance Co. of North America, 241 A.2d 734, 735 (D.C. 1968). The determinative factor is whether the employer has the right to control the employee in the performance of his work. Id.

In light of these five factors, the record shows that Murray's, not WMATA, directed and controlled how Mr. Jenkins did his job. Murray's hired Mr. Jenkins to drive its vans under a contract with WMATA to provide paratransit services. (Jenkin's Depo. at p. 9). Murray's paid Mr. Jenkins' wages. (Jenkin's Depo. at p. 8). Murray's acted on its own to fire its employees and would have been responsible for firing Mr. Jenkins. (Makel Depo. at p. 69-70). Murray's dealt with any customer complaints brought against its employees. (Makel Depo. at p. 69-70). Murray's created and enforced its

own standard operating procedures, trained its employees, and ensured Mr. Jenkins complied with its SOPs. (Makel Depo. at p. 25). Murray's trained Mr. Jenkins on the operation and use of its vans. (Makel Depo. at p. 69). Murray's provided safety training to Mr. Jenkins as well. (Makel Depo. at p. 70-71). Murray's maintained Mr. Jenkins' personnel records. (Makel Depo. at p. 37). Murray's maintained Mr. Jenkins' trip manifests, assigned his trips and communicated with him during his work day regarding trip status throughout the day. (Jenkins' Depo. at p. 15; Makel Depo. At p. 65-66).

Plaintiff does not dispute that WMATA exercised no control over how Mr. Jenkins performed his day-to-day tasks. In the Joint Pretrial Statement, plaintiff's stipulates that William Jenkins was an employee of Murray's. (Part E, Undisputed Issues/Stipulations). It is undisputed that no agency relationship existed between WMATA and Mr. Jenkins. Therefore, WMATA is entitled to summary judgment and dismissal of complaint with prejudice.

B. **No agency relationship existed between WMATA and Murray's, because Murray's was an independent contractor, therefore, WMATA is not liable for any alleged act or omission committed by Murray's or its employees.**

The "independent contractor" rule applies when an entity hires a contractor to perform certain work and maintains no control over the work or the workmen. The hiring entity is not liable for injuries to a third party that result from the independent contractor's work. W.M. Schlosser Company, Inc. V. Maryland Drywall Co., Inc., 673 A.2d 647, 652 (D.C. 1996). See also District of Columbia v. Debra Ali Hampton, 666 A.2d 30 (D.C. 1995)(holding foster parent was not District of Columbia's agent, but was an independent contractor and District was not liable under theory of respondeat superior); Stephen Bethea v. WMATA et al., No. 96CA10051 (D.C. Sup. August 1,

1999)(granting summary judgment for WMATA because no agency relationship existed between Murray's and WMATA, and Murray's retained exclusive control over hiring, payment, termination and supervision of driver and other employees)(Order attached); and <u>Janice Gamble v. WMATA, et al.</u>, No. CAL 97-12895 (P.G. Cir. Ct. October 23, 1998)(granting summary judgment for WMATA because no agency relationship existed between WMATA and contractor and WMATA did not own or operate van at time of incident or control employee van driver, although contractor did)(Order attached).

In determining whether an agency relationship exists, the court looks to the terms of any contract and the actual dealings between the parties. <u>Allison Marie Judah</u>, 744 A.2d at 1040. It is the burden on the person asserting an agency relationship to prove its existence. <u>Id.</u>, at 1041. D.C. courts look to five factors to determine whether an employer-employee relationship exists. The factors have already been set forth and analyzed in section A, <u>supra</u> at 7-8. WMATA hired Murray's to provide paratransit transportation services to disabled individuals within the District of Columbia pursuant to a contract agreement. The written agreement between WMATA and Murray's expressly stated that Murray's would be an independent contractor, and WMATA would not control the manner in which Murray's conducted its business operation. The contract sets forth that Murray's was solely responsible for the day-to-day operation of its business and stated that Murray's "shall be" responsible for hiring, training and disciplining its employees and for purchasing, operating and maintaining its vehicles. (WMATA Supply and Service Contract, Scope of Services, p. III-2,3,5,6).

WMATA exercised no control over the day-to-day operation of Murray's transit operations or daily activities. Murray's hired and paid its employees. Murray's trained,

5

supervised and terminated its employees. Murray's owned its own vehicles and maintained and trained its operators how to use its vehicles. Plaintiff has stipulated that Murray's owned the vehicle used by Mr. Jenkins, and it is undisputed that WMATA did not operate or maintain that particular vehicle or any of its wheelchair apparatus. (Pretrial Statement at Part E, Undisputed Issues/Stipulations). Nothing in the record establishes an agency relationship between WMATA and Murray's, or disputes Murray's status as an independent contractor of WMATA. Therefore, summary judgment for WMATA should be granted and plaintiff's complaint should be dismissed with prejudice.

It is on these grounds that WMATA seeks dismissal or in the alternative summary judgment.

Respectfully submitted,

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

Carol O'Keefe #445277
Acting General Counsel

_____
Mark F. Sullivan, #430876
Deputy General Counsel

_____
Karen Kohn Fineblum #452800
Assistant General Counsel
WMATA - 600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-2559

7

THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

GREGORY BAGLEY                          :
                                        :
    Plaintiff,                          :
                                        :
v.                                      :   Civil Action No. 01CA007271
                                        :   Calendar #1 - Judge Fisher
WASHINGTON METROPOLITAN                 :   Next Event: Trial
AREA TRANSIT AUTHORITY, et al.          :   April 11, 2005 at 9:30 a.m.
                                        :
    Defendants.                         :

### LIST OF UNPUBLISHED DECISIONS ATTACHED TO WMATA'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

1. Stephen Bethea v. WMATA et al., No. 96CA10051 (D.C. Sup. August 1, 1999).

2. Janice Gamble v. WMATA et al., No. CAL97-12895 (P.G. Cir. October 23, 1998).